UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-4389

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RUBIN C. SLADE, JR.,

Defendant - Appellant.

Appeal from the United States District Court for the Northern
District of West Virginia, at Elkins.  Irene M. Keeley, Chief
District Judge. (CR-03-1)

Argued:  December 1, 2006            Decided:  May 11, 2007

Before NIEMEYER, WILLIAMS, and KING, Circuit Judges.

Affirmed by unpublished opinion.  Judge Niemeyer wrote the opinion,
in which Judge Williams and Judge King joined.

**ARGUED:** Matthew Anthony Victor, Charleston, West Virginia, for
Appellant.   Stephen  Donald  Warner,  Assistant  United  States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Elkins, West
Virginia, for Appellee. **ON BRIEF:** Rita R. Valdrini, Acting United
States Attorney, Wheeling, West Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

After Rubin Slade was convicted for armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and for brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), the district court sentenced him to two consecutive terms of life imprisonment. On appeal, Slade contends (1) that the district court abused its discretion in refusing to investigate the suggestion that jurors were unable to hear trial proceedings; (2) that the district court erred in counting his 1981 Virginia robbery conviction as a "strike" for purposes of the federal "three strikes" statute, 18 U.S.C. § 3559(c); and (3) that the district court imposed an unreasonable variance sentence for his brandishment conviction when it increased a recommended guideline sentence of seven years to life imprisonment. For the reasons that follow, we affirm.

I

On the snowy morning of December 5, 2002, Slade walked into the Chenoweth Creek Branch of the Mountain Valley Bank located on the outskirts of Elkins, West Virginia, wearing a camouflage army jacket, sunglasses, a hood, and carrying two flower-print pillow cases and a small caliber pistol. He approached two bank tellers, giving each an empty pillow case, and pointed the pistol at them saying, "Put the money in the bag." Slade walked out of the bank with $12,020.90.

A week later, police apprehended Slade.  He was indicted on two counts -- one charging him with armed bank robbery and the other charging him with brandishing a firearm during and in relation to a crime of violence -- and tried before a jury.

During voir dire, two members of the venire informed the court that they had difficulties hearing.  In response, the court adopted procedures during the trial to assure itself that the jury were hearing the proceedings.  At the close of the government's case, Slade's counsel told the district court that he had been informed by a court clerk that "the jury has stated that it's having trouble hearing the lawyers, and perhaps, the witnesses and the Court." When the district court asked Slade's counsel which court clerk had told them this, he could not remember.  After the court recalled to counsel the instructions it had given to the jury directing them to raise their hands if they could not hear and noted that none had done so, the court refused to investigate counsel's suggestion further.  The jury convicted Slade on both counts.

During sentencing, the district court applied the three-strikes law, 18 U.S.C. § 3559(c), which imposes a mandatory life sentence for those convicted of three "serious violent felonies," to the bank robbery count.  Slade challenged one of the predicate offenses -- a 1981 robbery conviction in Virginia -- as not being a serious violent felony as defined by the statute.  After an extended hearing, during which the district court received

-3-

evidence, the court concluded that the prior Virginia conviction satisfied the statute because Slade had used a pocketknife in the course of robbing a hitchhiker. With respect to the brandishing count, the district court understood that the Sentencing Guidelines recommended a seven-year sentence and increased that sentence to life imprisonment because brandishing was at the heart of the bank robbery and therefore was an essentially equivalent violation. This appeal followed.

II

Slade contends first that the district court committed structural error in refusing to investigate whether the jurors had heard all of the trial proceedings. The district court, concluding that it had communicated sufficiently with the jury to be assured that the jury heard the proceedings, rejected Slade's motion. We conclude the district court did not abuse its discretion in denying Slade's motion.

The issue first arose during voir dire when a member of the venire complained of having hearing difficulties. The district court responded that "it is important that you hear all the questions and it's very important once we start this, that you hear the answers from the witnesses." The court told the juror to "consider this issue while I am finishing up the voir dire this morning, and then I'm going to call you up and ask . . . how much of it you think you heard and how much you may have missed." As

-4-

promised, the district court revisited the prospective juror's hearing issue as voir dire drew to a close, and the juror said that he "might" have trouble hearing some things. At this point, a second juror spoke up, stating that he too had a "hearing problem." When asked if he had heard "everything this morning," he replied, "Most of it, yes."

During the jury selection process, when counsel were given the opportunity to strike prospective members of the jury, the district court brought the hearing difficulties of the two prospective jurors to the attention of both the prosecution and the defense. Neither, however, wished to strike the two jurors, either for cause or with their peremptory strikes. As a result, the two members of the venire who had complained of having hearing problems were impaneled as jurors.

Throughout the trial, the district court took steps to ensure that the jury heard the proceedings. It repeatedly instructed the jury to inform the court if they had any difficulty in hearing the proceedings. For example, the court told the jurors, "if you have any problems hearing raise your hand. I need to know about it as soon as the problem starts." The court also repeatedly instructed witnesses and counsel throughout the trial to speak clearly and into the microphone, reminding them that the jurors needed to hear them. For example, the court instructed one witness to speak "in a nice loud voice so all the jurors can hear you"; another to

"speak directly into the microphone . . . so everyone can hear you"; and yet another to speak "out loud, so we can hear." These warnings were given to each witness and lawyer, sometimes more than once.

At the close of the government's case, Slade's counsel requested that the court conduct an investigation as to whether the jury were hearing the proceedings, inasmuch as counsel had heard something from a clerk to the effect that the jury was having trouble hearing the lawyers, perhaps the witnesses, and perhaps the court. The court responded, "This jury was instructed by me, that if any member of the jury could not hear, they were to raise their hand as soon as they could not hear. I have been carefully scrutinizing this jury during the entire two days of trial. No one has raised their hand." Slade's counsel conceded that fact, and the court refused to investigate the matter further.

At the end of the trial, prior to charging the jury, the court told the jury that "[i]f at any time during the delivery of this charge, any juror does not hear what I am saying, I want you to raise your hand and I will repeat what I've said." No juror ever raised his hand then, just as none had during the course of trial.

We agree with the district court that there is nothing in the record to indicate that the jury was not in fact hearing trial proceedings. The court had repeatedly advised the jury to raise their hand if they could not hear, and none had done so. The court

also repeatedly instructed witnesses and lawyers to speak loudly and clearly into the microphone. Finally, the court indicated that it had observed the jury throughout the course of the trial and had no reason to conclude that the jury was not hearing the proceedings. In these circumstances, we readily conclude that the district court did not abuse its discretion in denying Slade's motion. See United States v. Jones, 542 F.2d 185, 194 (4th Cir. 1976) (stating that we "accord deference to the [district court's] informed discretion" whether to investigate a claim of jury infection).

                                III

Slade next contends that the district court erred in sentencing him under the federal three-strikes law on the armed bank robbery conviction, arguing that his 1981 Virginia robbery conviction was not a "serious violent felony," as required by the three-strikes law. He maintains that there is no evidence that he used a firearm or other dangerous weapon during the course of the 1981 Virginia robbery, to which he had pleaded guilty.

The three-strikes law mandates a life sentence for "a person who is convicted . . . of a serious violent felony . . . if the person has been convicted on separate prior occasions . . . of 2 or more serious violent felonies." See 18 U.S.C. § 3559(c)(1)(A)(i). While the term "serious violent felony" includes robbery, see id. § 3559(c)(2)(F)(i), the statute gives the defendant an opportunity

-7-

to disqualify a robbery offense as a predicate offense "if the defendant establishes by clear and convincing evidence that no firearm or other dangerous weapon was used [or was threatened to be used] in the offense and the offense did not result in death or serious bodily injury . . . to any person," id. § 3559(c)(3)(A)(i), (ii).

Slade contends that in connection with his 1981 conviction, no weapon was involved. Alternatively, he argues that if a weapon was involved, it was a pocketknife that did not constitute a "dangerous weapon."

After the government offered evidence that a pocketknife was used in accomplishing the robbery, Slade offered the testimony of his co-defendant in that case who testified that Slade neither used a dangerous weapon, nor committed the robbery at all. In somewhat extended findings of fact, the district court found Slade's co-defendant incredible. The court stated that the witness testified in a manner "that this court views to be false . . . in many material respects." The court also noted that the 1981 conviction was based on Slade's plea of guilty to violating Virginia Code § 18.2-58, which imposes special penalties for committing robbery "by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault . . ., or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever." (Emphasis added). In the

circumstances where Slade's only evidence was discredited by the district court and was patently inconsistent with the government's evidence and Slade's guilty plea, we conclude that Slade did not carry his burden of proving by "clear and convincing evidence" that no "dangerous weapon was involved in the offense."  See 18 U.S.C. § 3559(c)(3)(A)(i).

Slade argues that even if a pocketknife was involved in the robbery, it did not qualify as a "dangerous weapon."  We reject his contention by applying the definition of dangerousness adopted by the Supreme Court in McLaughlin v. United States, 476 U.S. 16 (1986).  In concluding that an unloaded gun was a "dangerous weapon" within the meaning of the federal bank robbery statute, the Supreme Court stated:

> First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place.  In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue.  Finally, a gun can cause harm when used as a bludgeon.

Id. at 17-18.

Each reason given by the Court in McLaughlin for regarding an unloaded handgun as a "dangerous weapon" applies with equal force to a pocketknife.  First, a pocketknife is typically and characteristically dangerous; its blade serves no other purpose but to cut and wound.  Second, the display of a pocketknife in a

-9-

threatening situation, such as a robbery, will certainly instill fear in the average citizen, raising the possibility of a violent response. Finally, just as a gun "can cause harm when used as a bludgeon," a pocketknife can cause even more harm when so used because of its sharp blade.

At bottom, the district court did not err in concluding that the 1981 Virginia robbery conviction was a serious violent felony, as that term is used in 18 U.S.C. § 3559(c).

IV

Finally, Slade contends that the district court's upward variance sentence on Count 2 (the brandishing count) from seven years' imprisonment to life imprisonment was unreasonable. The district court assumed that the Sentencing Guidelines recommended a sentence of seven years for a violation of 18 U.S.C. § 924(c)(1)(A)(ii), and acting under 18 U.S.C. § 3553(a), it enhanced the sentence because, as the court stated:

> [W]hen one thinks about this at a deeper level, the point here is that the use of weapons in the count of conviction is probably the most horrifying fact of the case. The defendant brandished this -- this gun with the -- before the tellers, striking them with a tremendous amount of fear and I am disinclined to believe that the sentence for the -- on the weapons charge should be any less than the sentence for the bank robbery, because the need to protect the public from further crimes is still the same. The need to afford adequate deterrence is still the same, and the need to reflect the seriousness of the offense to promote respect for the law and to provide just punishment for the offense, is still the same for both of these counts. The fact that we have cleared up what the applicable maximum is [life

-10-

imprisonment], leads this Court to conclude that from a legal perspective the maximum sentence is available to it, if I make a determination that such a sentence is sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2).  And I believe that it is and I, therefore, believe that the sentence of life on the felony weapons conviction is a reasonable sentence.

If we were to conduct an analysis of so great an enhancement, we would likely find the variance unreasonable.  But because the district court erred in concluding that the Sentencing Guidelines recommended a seven-year sentence, rather than life imprisonment, we need not examine the reasonableness of the variance.

Section 2K2.4 of the Sentencing Guidelines provides that the recommended guideline sentence for a violation of 18 U.S.C. § 924(c) is the minimum term of imprisonment required by statute. Section 5G1.1(b), in turn, provides that when the statutory minimum exceeds the maximum applicable guideline range, the statutory minimum is the recommended guideline sentence.  In this case, the statutory minimum for a violation of § 924(c) is life imprisonment, and therefore the recommended Guidelines sentence is life imprisonment.

Section 924(c) provides a term of imprisonment for brandishing a firearm of not less than seven years "[e]xcept to the extent that a greater minimum sentence is otherwise provided by . . . any other provision of law."  (Emphasis added).  Section 3559(c) is such "other provision."  It states that "[n]otwithstanding any other provision of law, a person who is convicted . . . of a serious

violent felony shall be sentenced to life imprisonment" if the person was previously convicted of two or more "serious violent felonies."  18 U.S.C. § 3559(c)(1)(A)(i).

In this case, Slade fulfills the conditions of § 3559(c).  He was convicted under § 924(c) of brandishing a firearm in connection with a bank robbery, and for purposes of § 3559(c), that offense is defined to be a "serious violent felony."  <u>See</u> 18 U.S.C. § 3559(c)(2)(F)(i).  Because Slade was previously convicted of two serious violent felonies, his sentence for the brandishing offense must be life imprisonment.

Because the Sentencing Guidelines thus recommend the same sentence that the district court imposed by an imperfect application of 18 U.S.C. § 3553(a), any error attributed to the district court's process in arriving at the life sentence is harmless.  The life sentence itself that the district court imposed on Count 2 was not erroneous; indeed, it was mandated by 18 U.S.C. § 3559(c).

Accordingly, we affirm the judgment of the district court.

<u>AFFIRMED</u>